# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| BILLY PAUL RAMSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:16-cv-00079 |
| ) | CHIEF JUDGE CRENSHAW |
| GREENBUSH LOGISTICS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pending before the Court is Greenbush Logistics, Inc.'s ("Greenbush") Motion to Dismiss, or in the Alternative, to Transfer Amended Complaint (Doc. No. 23), to which Billy Paul Ramsey has responded in opposition (Doc. No. 27) and Greenbush has replied (Doc. No. 40). For the reasons that follow, the Motion will be granted insofar as Greenbush requests a transfer of this action.

### I. Factual Background

The Amended Complaint alleges the following relevant facts:

Ramsey is a resident of Leoma, Tennessee, and works for Greenbush, which is a "Domestic Corporation" with its principal place of business located at 445 Singletary Road in Abbeville, Alabama. (Doc. No. 21, Am. Cmpl. ¶¶ 1, 2, 9). Greenbush does business in Tennessee by delivering treated lumber to multiple businesses in this state on a weekly basis. (Id. ¶ 2). Its Tennessee customers include: "Parkes Lumber Company in Lawrenceburg; Cross Roads Building Supply in Etheridge, 412 Building Supplies in Hohenwald, Tennessee, Augustin Lumber Company in Loretto; Pulaski Lumber Company in Pulaski; Quality Metals Supply in Pleasantville; Buck Building Supply in Decaturville; Marvin's Building Materials in Lewisburg; Williams Supply in Savannah; Old Time Lumber in Counce; Stewart

1

Building Supply in Dickson; and Home Depot, which has multiple locations throughout" the state. (Id. ¶ 11).

Ramsey suffers from epilepsy and Greenbush is aware of this condition. Several months after he began working as a mechanic for Greenbush on May 14, 2012, Ramsey was placed on the night shift at Greenbush's facility. (Id. ¶¶ 9, 15). Ramsey notified Greenbush that his epilepsy "prevented him from performing adequately with regards to safety, quality, and productivity." (Id. 16). Nevertheless, he was required to continue to work the night shift for the next several months. (Id. ¶ 17).

On December 9, 2013, Ramsey contacted Dewayne Heath in Human Resources about a reasonable accommodation in the form of a shift change. (Id. ¶ 18). That same day, Dr. James H. Bealle of Pulaski, Tennessee, "wrote a letter providing documentation of Plaintiff's disability, noting that sleep deprivation and an irregular sleep pattern results in the worsening of epilepsy symptoms," and suggesting that "working third shift and frequently switching between shifts could result in seizure activity and cognitive dysfunction[.]" (Id. ¶¶ 19, 20).

On August 26 and August 27, 2014, Dr. Norman McNulty, a physician located in Lawrenceburg, Tennessee, "sent Defendant documentation about Plaintiff's history of seizures and a new condition, 'shift work sleep disorder.'" (Id. ¶ 21). Dr. McNulty "noted that working the third shift was impairing Plaintiff's ability to function normally, and to operate safely at work during those hours." (Id.).

Since being employed at Greenbush, Ramsey "has been passed over for a raise on several occasions," and, in fact, has yet to receive a raise. (Id. ¶ 22). He further claims that he (1) "has been expected to perform more tasks than other employees" and (2) "received multiple 'write-ups' after his requests for accommodation," while "[o]ther employees without disabilities did not receive write-ups for similar actions." (Id. ¶¶ 23, 24).

Based upon the foregoing, Ramsey filed a two-count Complaint. In the first count, he alleges violations of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.;* in the second, he alleges violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*

In response to the Complaint and in support of its Motion to Dismiss or Transfer, Greenbush has filed the Declaration of Kevin Savoy, its Vice President. In that Declaration, Savoy states, among other things, that Greenbush maintains no offices, terminals, or physical presence in Tennessee; does not own, rent, lease or store any property in Tennessee; does not have a Tennessee business address (physical P.O. box or otherwise) or telephone number; does not hold any meetings in Tennessee; does not maintain any business records in Tennessee; is not registered to do business in Tennessee; has no agents or employees who work out of Tennessee; has no officers, executives or board members that reside in Tennessee; does not have any bank accounts in the state of Tennessee; has not filed or intervened in a lawsuit in the state of Tennessee; has not specifically assigned any sales agent to target the state of Tennessee; and has not targeted Tennessee with any campaign advertising its services. (Doc. No. 24-1, Savoy Decl. ¶ 5).

## II. Legal Analysis

The Motion to Dismiss or Transfer is in three parts. First, Greenbush argues this case should be dismissed for lack of personal jurisdiction and improper venue. Second, it asserts, alternatively, that this action should be transferred under 28 U.S.C. § 1404 to the Northern District of Alabama because that forum is more convenient for the witnesses and the parties. Third and finally, Greenbush contends that, if the Court determines that dismissal is not warranted and that the case should not be transferred, Ramsey's claims should be dismissed for failure to state a claim. Having considered the parties' arguments, the Court finds that personal jurisdiction does not exist and that this case should be transferred "in the interest of justice" under 28 U.S.C. § 1406(a).

### A. Personal Jurisdiction

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts," Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014), and, thus, in order for this Court to have personal jurisdiction over Greenbush, Ramsey must show[1] that Greenbush has (or had) sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend `traditional notions of fair play and substantial justice,'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).[2] Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

"Personal jurisdiction maybe found either generally or specifically." Miller, 694 F.3d at 678 (quoting Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549-50 (6th Cir. 2007)). "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant." Id. at 678-9 (quoting Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997)). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." Id. Ramsey has established the existence of neither.

1. *General Jurisdiction*

---

[1] Ramsey has the burden of showing personal jurisdiction but "that burden is 'relatively slight' where, as here, the . . . court rules without conducting an evidentiary hearing." MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 899 (6th Cir. 2017) (citing Air Prods & Controls Inc. y. Safetech Int'l Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quotation omitted)). "To defeat dismissal in this context, [Ramsey] need make only a prima facie showing that personal jurisdiction exists." Id. Nevertheless, "[i]n response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012) (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)).

[2] "Tennessee's long-arm statute has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution," and, thus, "'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) (citation omitted). Because of that, "the court 'need only determine whether the assertion of personal jurisdiction violates constitutional due process.'" Id. (citation omitted).

Ramsey cites First Community Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 383 (Tenn. 2015) for the proposition that "[b]ecause Defendant transports its product in Tennessee and delivers its product to its clients who have places of business in Tennessee, then under Tennessee law, Plaintiff's Amended Complaint has established sufficient contacts between Greenbush and Tennessee with reasonable particularity." (Doc. No. 27 at 3). That case, however, does not stand for the proposition cited.

In First Community, the Tennessee Supreme Court was presented with the question of whether three rating agencies—The McGraw-Hill Companies, Inc., Moody's Investors Service, Inc., and Fitch, Inc.—were subject to personal jurisdiction in Tennessee. Specifically with respect to general jurisdiction, plaintiff argued that each rating agency "admittedly d[id] millions of dollars of business per year in Tennessee," had "engaged in 'longstanding business' in Tennessee, including maintaining offices and performing ratings services there," and all three "distribute[d] various print materials in Tennessee." Id. at 386. The Tennessee Supreme Court was unpersuaded by these arguments noting, as "an initial matter, . . . that it is undisputed that Tennessee does not serve as the formal place of incorporation or principal place of business for any of the three Ratings Agencies," and finding "the evidence provided by the Plaintiff is insufficient to support the conclusion that any of the Ratings Agencies' relationships with Tennessee were more substantial than their relationship with any of the other numerous forums in which the Ratings Agencies do business." Id. at 386-87. "While the contacts alleged by the Plaintiff certainly established that the Ratings Agencies engage in business in Tennessee, nothing in the record supports the conclusion that any of the Ratings Agencies' contacts with Tennessee are so substantial or of such a nature as to render them 'essentially at home' here." Id. at 387.

The "essentially at home" language comes from Goodyear Dunlop Tires Operations, S.A. v. Brown, 546 U.S. 915, 919 (2011), wherein the Supreme Court held that a court may assert general

jurisdiction over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Thus, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. at 924. "With respect to a corporation, the place of incorporation and principal place of business are '[p]aradigm ... bases for general jurisdiction,' and have the virtue of being unique that is, each ordinarily indicates only one place—as well as easily ascertainable." Daimler AG v. Bauman, 134 S. Ct. 746, 759 (2014) (citation omitted). "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." Id.

"Goodyear did not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business," but "[i]n recent years the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction." Kipp v. Ski Enter. Corp. of Wisc, Inc., 783 F.3d 695, 698 (7th Cir. 2015) (citation omitted). "Any additional candidates [beyond the principal place of business or state of incorporation] would have to meet the stringent criteria laid out in Goodyear and Daimler, which require more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." Id.; see Brown v. Lockheed Martin Corp., 814 F.3d 619, 626 (2d Cir. 2016) (concluding that, although plaintiff's arguments regarding general jurisdiction "might have sufficed under the more forgiving standard that prevailed in the past, [plaintiff's] contacts fail to clear the high bar set by Daimler to a state's exercise of general jurisdiction over a foreign corporation"); Patterson v. Aker Sols. Inc., 826 F.3d 231, 237 (5th Cir. 2016) (citing Goodyear and Daimler for the proposition that "[s]cholars have viewed the Court's recent personal jurisdiction decisions as part of an access-restrictive trend").

Ramsey cites no cases that would support the proposition that Greenbush's sending trucks into Tennessee on a weekly basis—without even a hint as to how that activity might affect its revenue--

constitutes contacts that are so continuous and systematic as to render it at home here. The post-Goodyear/Daimler cases the Court has located are to the contrary. See e.g. Sportsman v. California Overland Ltd., 2017 WL 1093164, at *2 (N.D. Ill. Mar. 23, 2017) (finding no general jurisdiction in Illinois over a Minnesota nationwide trucking company that did not own or lease any property or facilities in Illinois, even though 5 of its 190 drivers resided in Illinois, and 8.9% of its 2015 revenues derived from Illinois and approximately 40 of its customers were in Illinois); Hayward v. Taylor Truck Line, Inc., 2015 WL 5444787, at *2-3 (N.D. Ill. Sept. 14, 2015) (finding no general jurisdiction of truck line headquartered in Minnesota, even though company in 2015 had 4,276 deliveries in Illinois, drove almost three million miles on Illinois highways, solicited drivers from Illinois, and had 12 employees that resided in Illinois); Farber v. Tennant Truck Lines, Inc., 2015 WL 518254 (E.D. Pa. Feb. 9, 2015) (finding that a nonresident trucking company that completed 4,600 deliveries in Pennsylvania, earned approximately 3% of its revenue from Pennsylvania deliveries, employed drivers who traveled hundreds of thousands of miles per year in Pennsylvania, purchased tens of thousands of gallons of gas per year in Pennsylvania, and made payments of over $1.7 million to Pennsylvania-based carriers over the course of several years was not subject to general personal jurisdiction in Pennsylvania); see also Holden v. Bah Exp.. Inc., 2013 WL 6199229, at *3 (M.D. La. Nov. 27, 2013) (rejecting contention that there was general jurisdiction in Louisiana where evidence from plaintiff failed to show "how many shipments originate or terminate in Louisiana, what percentage of its business comes from Louisiana customers, or even what portion of its business involves transit through the State").

## 2. *Specific Jurisdiction*

As noted, specific jurisdiction deals with a Defendant's contacts with the forum state relating to the claims at issue. The Sixth Circuit has identified three criteria for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

AlixPartners. LLP v. Brewington, 836 F.3d 543, 549-50 (6th Cir. 2016) (quoting Air Prods., 503 F.3d at 550). "If any of the three requirements is not met, personal jurisdiction may not be invoked." Miller v. AXA Winterhur Ins. Co., 694 F.3d 675, 680 (6th Cir. 2012). That is, "each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." LAK Inc. v Deer Creek Enters., 885 F.2d 1293, 1303 (6th Cir. 1989).

Ramsey makes no arguments to support specific jurisdiction, nor could he reasonably do so. His claims are that Greenbush failed to accommodate his disability, subjected him to unwarranted discipline, and failed to give him a raise. The facts giving rise to those allegations all occurred in Muscle Shoals, Alabama, and it was there, presumably, that all employment decisions were made.

### B. Venue

As an alternative to dismissal, Greenbush requests that this case "be transferred to the Northern District of Alabama pursuant to the *forum non conveniens* factors set forth in Section 1404(a)." (Doc. No. 30 at 3). While the Court will transfer the case to that district, it will do so on the basis of Section 1406, not Section 1404.

So far as relevant, Section 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought[.]" 28 U.S.C. § 1404(a). "Section 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege.'" Kerobo v. Sw. Clean Fuels, Corp., 285 F,3d 531, 538 (6th Cir. 2002) (quoting Van Dusen v. Barrack, 376 U.S. 612, 634 (1964)). Thus, "a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants." Pittock v. Otis Elevator Co., 8 F.3d 325, 329 (6th Cir. 1993) (citing Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980)).

Section 1406, on the other hand, provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). It "applies to actions that are brought in an impermissible forum; the district court need not have personal jurisdiction over defendants before transferring pursuant to this section.'" Jackson v. L & F Martin Landscape, 421 F. App'x 482, 483 (6th Cir. 2009) (citing Martin v. Stokes, 623 F.2d 469, 471 (6th Cir. 1980)).

Here, because this Court does not have personal jurisdiction, any transfer must be based on Section 1406(a). This action could have been brought in the Northern District of Alabama because Greenbush resides there and the cause of action arises out of events in that district. Accordingly, this case will be transferred to that court.

### III.     Conclusion

For the foregoing reasons, Greenbush's Motion to Dismiss, or in the Alternative, to Transfer Amended Complaint will be granted to the extent that it asks for the case to be transferred. The Court will transfer the action to the Northern District of Alabama.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE