# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| BILLY PAUL RAMSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 3:17-cv-01167-AKK |
| GREENBUSH LOGISTICS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Billy Paul Ramsey brings this employment discrimination case under the Americans with Disabilities Act of 1990, 104 Stat. 327, 42 U.S.C. § 12101 *et seq.* (the ADA) and the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* (the THRA), against his employer, Greenbush Logistics, Inc. Ramsey alleges that Greenbush failed to reasonably accommodate his disability and retaliated against him when he requested an accommodation in the first instance. Greenbush has now moved to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, doc. 55. That motion is fully briefed, docs. 56; 59; and 60, and ripe for review. After carefully examining the complaint and the parties' thorough and well-reasoned briefs, the court concludes Greenbush's motion is due to be granted.

1

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to comply with Rule 8(a)(2) or does not otherwise state a claim upon which relief can be granted. When evaluating a motion under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (emphasizing that "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level"). Ultimately, the line between possibility and plausibility is a thin one, and making this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.[1]

## II.   FACTS AND PROCEDURAL BACKGROUND

Ramsey, who suffers from epilepsy, was hired as a mechanic by Greenbush, an Alabama corporation, on May 14, 2012. Doc. 54 at 3. As a new hire, Ramsey informed Greenbush of his condition and requested that Greenbush allow him to work the day shift. *Id.* Greenbush originally scheduled Ramsey to work from 4:00

---

[1] While typically at this stage of a proceeding the district court "must convert the motion to dismiss into a summary judgment motion" if it considers documents outside the pleadings, the Eleventh Circuit has explained that the district court may rely on "an extrinsic document [at the pleading stage] if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Here, the parties do not dispute the authenticity of Ramsey's initially filed EEOC charge. Moreover, while Ramsey did not file his EEOC charge with this court, and his complaint does not reference the document, it is well-settled that prior to filing an ADA action in federal court, the ADA plaintiff must have "timely filed" a charge with the EEOC. *See, e.g.*, *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001). The court therefore concludes Ramsey's EEOC charge is "central" to his claim, and properly considered at the pleading stage without converting Greenbush's motion to dismiss into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

p.m. until 12:00 a.m., but, after Ramsey requested an earlier shift, rescheduled him to work from 3:00 p.m. to 11:00 p.m. *Id.* However, on June 2, 2013, Greenbush switched Ramsey to the 11:00 p.m. to 7:00 a.m. shift. *Id.*

Ramsey alleges that this change caused him to suffer from sleep deprivation and worsened his epileptic symptoms. *Id.* Seeking to avoid these symptoms, Ramsey requested a shift "swap" with a coworker on the day shift but, after a two week interval, Greenbush ended the swap and assigned Ramsey to work from 6:00 p.m. to 2:00 a.m. *Id.* at 3–4. Shortly after the change, Ramsey notified Greenbush in writing that he could not perform his job adequately on the night shift in light of his disability, and that he needed a more accommodating work schedule. *Id.* at 4. As part of this request, Ramsey provided medical information indicating that sleep deprivation and irregular sleep patterns due to frequent shift changes could worsen his epileptic symptoms. *Id.* Roughly two months later, Ramsey followed up on his request with a letter from his attorney documenting his disability. *Id.* Finally, in late August 2014, Ramsey's treating physician, Dr. Norman McNulty, also provided Greenbush with information regarding Ramsey's disability noting that, while Ramsey could work regular hours during the day, working at night impaired his ability to perform his job safely. *Id.* at 4–5.

In addition to purportedly failing to accommodate Ramsey, Greenbush also allegedly retaliated against him by denying him raises, insisting that he perform

4

more tasks than other employees, and issuing him multiple "write-ups" for failure to complete tasks. *Id.* at 5, 7. Ramsey remains employed at Greenbush, at least at the time he filed the second amended complaint now before the court. *Id.* at 3. On June 21, 2016, Ramsey filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination and retaliation. Doc. 56-1 at 12. Seven days later, the EEOC dismissed the charge as untimely. *Id.* at 9. Ramsey subsequently filed suit in the United States District Court for the Middle District of Tennessee, doc. 1, and Greenbush filed a motion to dismiss or transfer, arguing, among things, that the Tennessee court lacked personal jurisdiction. Doc. 24 at 1. The court agreed and transferred the case to the Northern District of Alabama where, it explained, Ramsey's cause of action arose. Doc. 31 at 9. After the transfer, Greenbush renewed the motion to dismiss presently under consideration. Doc. 55.

### III. DISCUSSION

Greenbush raises three arguments in support of its motion: (1) that Ramsey has failed to exhaust his administrative remedies; (2) that Ramsey has failed to plead sufficient factual allegations to support his claims; and (3) that there is no basis for imposing liability under the THRA because all of the relevant employment decisions took place in Alabama and the Act is limited to claims arising within Tennessee. The court will address each argument in turn.

## A. Failure to Exhaust Administrative Remedies

The parties agree that "under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964." *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) (citing 42 U.S.C. § 12117(a)). As relevant here, the plaintiff must show that she timely filed her complaint with the EEOC. *See, e.g.*, *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001). Moreover, to make sure that the EEOC has "the first opportunity to investigate the alleged discriminatory practices," a plaintiff's subsequent "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (quotation omitted).

Broadly read, Ramsey's EEOC charge alleges that Greenbush both failed to reasonably accommodate his disability and retaliated against him for seeking an accommodation. Doc. 56-1 at 12. Greenbush contends, however, that Ramsey failed to timely file the charge and that Ramsey's retaliation claims are not logically encompassed by the contents of his EEOC charge. The court will examine each claim to verify that Ramsey, in fact, complied with the procedural requirements imposed by the ADA before filing suit in federal court.

*1. Failure to Accommodate Claim*

Typically, "an ADA plaintiff must file a charge complaining about an allegedly unlawful employment practice . . . with the EEOC within 180 days of the employment practice." *Maynard*, 256 F.3d at 1262. Some states, including Tennessee, have established local or state level authorities "to grant or seek relief" for unlawful employment practices. *Id.* at 1263. In those states, the plaintiff has up to 300 days to file a charge with the EEOC, so long as the plaintiff has first filed a timely charge with the underlying state or local authority. *Id.* at 1262–63. Here, Ramsey's failure to accommodate claim is untimely under either the 180 or 300 day metric.

Ramsey's most recent request for an accommodation occurred on August 27, 2014, when his treating physician, Dr. McNulty, provided Greenbush with medical information supporting the existence of Ramsey's disability. Doc. 54 at 4–5. At that time, Dr. McNulty informed Greenbush that, while Ramsey's disability prevented him from working the night shift safely, he was able to work regular hours during the day. *Id.* The complaint does not indicate that Ramsey ever discussed his disability with Greenbush again. Instead, the next relevant event did not occur until June 2016, when Ramsey filed his EEOC charge. Doc. 56-1 at 12. In other words, based on the complaint, the most recent instance of alleged employment discrimination, i.e. the denial of the accommodation request Dr.

McNulty submitted on Ramsey's behalf, occurred over 600 days prior to the filing of his EEOC charge.

It is axiomatic that "discrete discriminatory acts are not actionable if time barred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). To get around this fact, Ramsey argues that his EEOC charge asserted a continuing violation. Docs. 59 at 6; 56-1 at 12. Thus, Ramsey contends that his EEOC charge was timely because he was still subject to Greenbush's failure to accommodate his disability at the time he filed the charge. Unfortunately for Ramsey, the Supreme Court has explained that a continuing violation theory is inapplicable to discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire . . . [which each] constitute[] a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Instead, "the timely-filing requirement erects an absolute bar on recovery for 'discrete . . . acts' occurring outside the limitations period." *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005). Ramsey's requests for accommodation all took the form of individualized shift transfer requests comfortably falling within the Supreme Court's definition of a discrete act in the employment discrimination context.

This conclusion is buttressed by at least one Eleventh Circuit decision, albeit in an unpublished case, which found that an employer's denial of a request for an accommodation under the ADA constituted a discrete act of discrimination. *See*

*Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015) (holding that an employer's failure to grant a requested accommodation "involved [a] discrete act[] of alleged discrimination"); *see also Taylor v. C&B Piping, Inc.*, No. 2:14-cv-01828, 2017 WL 1047573, at *3 (N.D. Ala. Mar. 20, 2017) (finding that denial of a request for an accommodation under the ADA constituted a discrete act). Further, the circuits that have addressed the issue have uniformly held that "'[a]n employer's denial of a request for a reasonable accommodation . . . is a discrete act of discrimination.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1059 (8th Cir. 2016) (quoting *Mercer v. Se. Pa. Transit Auth.*, 26 F. Supp. 3d 432, 442 (E.D. Pa. 2014)); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1245–47 (9th Cir. 2003) (denial of employee's request for a respirator is a discrete act of discrimination); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) (denial of a request for a religious accommodation constituted a discrete act). Therefore, because Ramsey has failed to articulate any reason for applying a continuing violation theory in the face of this contrary precedent, the court concludes that his failure to accommodate claims are untimely.

*2. Retaliation Claims*

Greenbush asserts that Ramsey's retaliation claims, as pleaded, are uniformly outside the scope of his EEOC charge. There is no requirement, however, that a subsequent judicial complaint encompass only the specific claims

asserted in the initially filed EEOC charge. Instead, the complaint may raise "any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (quotation omitted). The Eleventh Circuit has further clarified that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279–80 (11th Cir. 2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). Moreover, "'the scope of an EEOC complaint should not be strictly interpreted,'" and courts in this circuit are "'extremely reluctant to allow procedural technicalities to bar claims brought under [the ADA].'" *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465, 460–61(5th Cir. 1970)).

"The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." *Evans v. U.S. Pipe & Foundry, Co.*, 696 F.2d 925, 929 (11th Cir. 1983). And, when evaluating the scope of an EEOC charge, the critical aspect of the document "is the factual statement contained therein." *Sanchez*, 431 F.2d at 462. So, the simple fact that Ramsey checked the box for retaliation on his EEOC charge is not sufficient to determine that the claims of retaliation he now raises before this court were encompassed by

the charge. Doc. 56-1 at 12; *see Chanda*, 234 F.3d at 1225 (finding that even though plaintiff marked the box for retaliation, his EEOC charge included insufficient facts to reasonably encompass a retaliation claim based on national origin). Relevant here, Ramsey's EEOC charge details his retaliation allegation as follows: "I had asked for a reasonable accommodation which did not go well . . . Therefore, I believe I have been retaliated and discriminated against on the basis of the [ADA]." Doc. 56-1 at 12. This statement contains virtually no detail regarding the specific retaliatory behaviors experienced by Ramsey, and indeed is plausibly read to suggest that the only employment action Ramsey challenges is Greenbush's failure to accommodate his request for a shift transfer. The fact that all of the specific, factual allegations in the charge relate to Ramsey's work schedule and Greenbush's failure to alter that schedule to accommodate his disability further support such a reading. *Id.*

However, the court bears in mind that, in the context of employment discrimination, the rules are designed "to protect equality of opportunity among all employees and prospective employees . . . [and must be] . . . sufficiently liberal to protect their rights." *Sanchez*, 431 F.2d at 463. It is thus critical that courts liberally construe EEOC charges which are typically "prepared without the assistance of counsel." *Gregory*, 355 F.3d at 1280. In this light, Ramsey's EEOC charge appears to provide facts inextricably intertwining his twin claims for

discrimination and retaliation under the ADA. *See id.* (finding that even when the retaliation box was not marked on the EEOC form the facts alleged by the plaintiff "were inextricably intertwined with [the] complaints of . . . discrimination"). As discussed previously, while the gravamen of the charge is Greenbush's failure to accommodate Ramsey, it also directly references Ramsey's belief that Greenbush retaliated against him for seeking such an accommodation. Doc. 56-1 at 12. Accordingly, his subsequent judicial complaint, which provides specific examples of the retaliation he allegedly experienced, serves to amplify or more clearly focus the retaliation allegation in his original EEOC charge. *See Wu*, 863 F.2d at 1547. Perhaps most critically, the charge provided the EEOC with reasonable notice of the need to explore the possibility of retaliation against Ramsey and, so, the EEOC's investigation into that charge could logically have uncovered evidence supporting the existence of the retaliatory acts Ramsey now alleges. Therefore, the court cannot find, as a matter of law, that Ramsey's retaliation claim is beyond the scope of his EEOC charge.

### B. *Failure to Plead a Plausible Claim Under the ADA*

However, Ramsey's satisfaction of the ADA's procedural requirements with regard to his retaliation claim has no bearing on whether that claim also satisfies, as it must, the pleading standard established under Rule 8(a)(2) of the Federal Rules of Civil Procedure. Claims of retaliation under the ADA are assessed using

"the same framework [employed] for retaliation claims under Title VII." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). To establish a prima facie case of retaliation, Ramsey must show "(1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). However, because the prima facie case for retaliation constitutes "an evidentiary standard" rather than "a pleading requirement," *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002), Ramsey need only allege adequate facts to satisfy Rule 8(a)(2) by stating "'a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Greenbush primarily argues that Ramsey has failed to adequately plead facts establishing a causal connection between Ramsey's protected activity and the three potentially adverse employment actions his complaint appears to allege: (1) the denial of pay raises; (2) the frequent expectation that he perform more tasks than his coworkers; and (3) the receipt of multiple "write-ups." Doc. 54 at 5.[2]

---

[2] Ramsey's complaint also includes an allegation that he was "continuously harassed . . . as a result of seeking . . . an accommodation." Doc. 54 at 7. However, the rest of his complaint makes no reference to any harassing behavior beyond what has been outlined above. Thus, this allegation is an unsupported conclusory statement that the court need not credit with a presumption of truth. *See Iqbal*, 556 U.S. at 681 (explaining that it "is the conclusory nature of

Critically, to state a claim for retaliation, Ramsey must adequately allege that "the desire to retaliate was the but-for cause of the challenged employment action[s]." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). This requirement "can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). In the absence of other causal evidence, however, the requisite temporal connection must be "'very close.'" *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Moreover, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). In other words, the complaint must include sufficient factual detail to allow the court to plausibly infer the existence of retaliatory intent on Greenbush's part. Ramsey's threadbare complaint fails to provide the necessary allegations to make such a showing.

First, the complaint provides a date for only a single purportedly retaliatory incident, March 17, 2016, when a human resources manager issued Ramsey a

---

[the] allegations . . . that disentitles them to the presumption of truth"). And, in any event, Ramsey may not rely on vague allegations to state a claim. Instead, he is required to plead sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. He has not done so with respect to this allegation.

14

disciplinary write-up. Doc. 54 at 5. The causal connection between the protected conduct and this incident is missing because, as discussed above, Ramsey's most recent request for an accommodation occurred almost two years prior to the write-up. Further, he received the write-up before he filed his EEOC charge, doc. 56-1 at 12, and thus cannot show a causal link between the two. As for the other alleged retaliatory incidents, while Ramsey generally alleges Greenbush passed him over for raises and asked him to perform more tasks than his coworkers, his complaint fails to provide more specific information regarding these incidents or the dates on which they occurred. *See* Doc. 54 at 5. Without more, the court has no valid basis to plausibly infer a connection based on the temporal proximity between Ramsey's accommodation requests and the purportedly retaliatory actions. Ramsey has simply not provided this court with any information bearing on that analysis despite having had multiple opportunities to do so.

Second, and more importantly, the complaint provides no other allegations bearing on the existence of a causal link between the adverse employment actions and Ramsey's accommodation requests. Ramsey does not allege that anyone at Greenbush expressed displeasure at his requests or, for that matter, ever commented on them at all. Nor does he provide any other factual allegations indicating that Greenbush or its employees specifically targeted him based on his requests for accommodation. In short, the complaint is silent with respect to

relevant facts bearing on Ramsey's belief in the existence of retaliatory animus aimed at him. It simply indicates that particular incidents occurred, and then broadly paints them with a retaliatory brush. Such conclusory assertions are not enough to allow this court to infer that the requests for accommodation motivated the purported retaliatory conduct.³

The closest Ramsey comes to meeting the causal requirement, however tenuously, is his assertion that "employees without disabilities did not receive write-ups for similar actions." *Id.* This allegation, however, appears to allege discrimination based on disability, and, as noted, the requisite casual element requires a showing that a desire to retaliate, not discriminate, is necessary to establish a retaliation claim. *See Nassar*, 133 S. Ct. at 2528. Thus, this allegation has no bearing on the court's analysis of causation here.

Ramsey has now had the opportunity to file two amended complaints in this case, and he has still failed to plausibly link the retaliatory behavior he asserts with his accommodation requests. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–

---

³ The court's conclusion in this regard is further buttressed by the threadbare nature of Ramsey's EEOC charge. Although Ramsey did indicate he was the target of retaliation he provides no factual detail regarding the basis for this belief. Doc. 56-1 at 12. He certainly does not mention that he was denied pay-raises, subjected to more onerous work assignments, or targeted for discipline based on his accommodation requests. *Id.*

79. To survive a motion to dismiss, Ramsey must put forward sufficient evidence to allow the court to plausibly infer the *sine qua non* of a retaliation claim–retaliatory intent. Where, as here, the complaint offers nothing more than pure speculation, the retaliation claim is due to be dismissed. *See Twombly*, 550 U.S. at 555 (noting that to survive a motion to dismiss a complaint need provide facts rather than rely on speculation). The court is mindful of the fact that Ramsey need not establish a prima facie case of retaliation at the pleading stage. Still, his complaint must provide more than a list of purportedly adverse employment actions and an allegation that he engaged in protected activity. He must provide the court with an adequate basis for drawing an inference that Greenbush, in fact, sought to retaliate against him. A conclusory statement that he was "retaliated" against is legally insufficient. Ramsey has failed to meet his burden on the pleadings despite three opportunities to do so—his original complaint and two amendments. The court declines to give him a fourth chance to replead this claim.

### C. Application of the THRA Outside of Tennessee

Greenbush also challenges Ramsey's THRA claims on the basis that the statute covers only actions occurring within Tennessee and all the alleged violations of the Act occurred in Alabama. A prior decision in this case has already concluded that the facts giving rise to Ramsey's claims uniformly arose in Alabama. Doc. 31 at 9 (holding that Ramsey's "cause of action arises out of

events" in the Northern District of Alabama). Based on that decision, and after careful consideration of the THRA's plain language, the court finds that the Act does not apply to Greenbush and, therefore, Ramsey's THRA claim is due to be dismissed.

The court begins with an analysis of the language of the statute. Here, the Tennessee Legislature enacted the THRA to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Act of 1964, 1968 and 1972." TENN. CODE ANN. § 4-21-101(a)(1). Among other things, the THRA "[s]afeguard[s] all individuals within the state [of Tennessee] from discrimination . . . in connection with employment." § 4-21-101(a)(3). An employer, for purposes of the THRA, is defined, in relevant part, as "persons employing eight (8) or more persons within the state." § 4-21-102(5). So, to even be subject to the THRA's employment discrimination provisions, *see* § 4-21-401, Greenbush must meet the statutory definition of employer included in the Act.

Crucially, Ramsey's complaint is silent regarding the number of employees Greenbush has within the state of Tennessee, and while he does assert that Greenbush qualifies as a person under the Act, he specifically brings this action under §4-21-401, a provision of the THRA that regulates employers. Doc. 54 at 7. Ramsey has simply provided no basis for concluding that Greenbush qualifies as an employer for THRA purposes, and the court has already determined that

Greenbush "maintains no . . . physical presence in Tennessee . . . has no agents or employees who work out of Tennessee . . . [or] officers, executives or board members that reside in Tennessee." Doc. 31 at 3. Thus, even if the THRA regulates conduct occurring outside of Tennessee, an extremely dubious proposition,[4] Greenbush is still not subject to liability for employment discrimination under the Act because it does not employ eight or more individuals within Tennessee, as it must do to qualify as an employer under the Act. *See* § 4-21-102(5). "[W]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 32 F.3d 528, 531 (11th Cir. 1994) (quotation omitted). Thus, because the plain language of the THRA demonstrates that Greenbush is not an employer

---

[4] The Sixth Circuit's analysis of the statute, albeit in an unpublished case, has determined that the THRA has no such extraterritorial application holding that it "explicitly limits its authority to individuals within the state [of Tennessee]." *Marshall v. Federal Exp. Corp.*, 12 F. App'x 186, 188 (6th Cir. 2000). Ramsey has not cited to any cases that support his position that the THRA applies to conduct outside of Tennessee, and the court has already concluded that none of the events supporting his claims occurred in that state. *See* Doc. 31 at 3, 8–9. So, even if Greenbush was an employer under the THRA, the statute would still not apply to the extra-territorial actions at issue in this case.

19

under the Act, it is not subject to the Act's employment discrimination provision and Ramsey's THRA claim is due to be dismissed.[5]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Greenbush's motion, doc. 55, is **GRANTED**, and all of Ramsey's claims are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close the file.

**DONE** the 19th day of December, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[5] Given this conclusion, the court need not address Ramsey's choice of law argument, because, as explained, even if the court applies the THRA here, Ramsey's allegations do not subject Greenbush to liability for employment discrimination under the Act.